**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **RAY DU BOC ALI, IZELL MCCLOUD, and CLEMON WILLIAMS on behalf of themselves and other similarly situated** | : : : : | **Case No.:** |
| | : | **Judge:** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **COMBE INCORPORATED; COMBE INTERNATIONAL LTD** | : : | **COMPLAINT AND JURY DEMAND** |
| | : | |
| **Defendants.** | : : | |

Plaintiffs, individually and on behalf of all others similarly situated, by and through counsel, allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as named Class representative Plaintiffs and Defendants are citizens of different states and the amount in controversy claimed individually by each named Class representative Plaintiff exceeds the sum of $ 75,000, exclusive of interest and costs.

2.     The Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367 for Class Members whose claims do not exceed $75,000.

3.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action where the aggregate claims of all Members of the putative Class are in excess of $5,000,000.00, exclusive of interest and costs, and many of the Members of the putative Class are citizens of different states than Defendants.

4.      Plaintiff Ray Du Boc Ali is a resident and citizen of Bossier City Louisiana in Bossier Parish, Louisiana.

5.      Plaintiff Izell McCloud is a resident and citizen of Palatka Florida in Putnam County, Florida.

6.      Plaintiff Clemon Williams is a resident and citizen of Wake Forest in Franklin County, North Carolina.

7.      Defendant Combe Incorporated is a Delaware corporation, which has its principle place of business at 1101 Westchester Ave., White Plains, New York 10604.

8.      At all times relevant hereto, Defendant Combe Incorporated was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Just For Men hair care and dye products.

9.      Defendant Combe International LTD is a Delaware corporation, which has its principal place of business at 1101 Westchester Ave., White Plains, New York 10604.

10.     At all times relevant hereto the Defendant Combe International LTD was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Just For Men hair care and dye products.

11.     This Court has personal jurisdiction over Defendants because said Defendants maintain principle places of business within the State of New York and this District. Defendants' have also regularly and purposefully transacted business and engaged in commercial activities within the State of New York and this District.

12.     Venue is proper within this district pursuant to 28 U.S.C. §1391(b)(1) and (d), because defendants are residents of the State of New York and have had such contacts within this District that would be sufficient to subject it to personal jurisdiction if this District were a state.

## FACTUAL ALLEGATIONS

13.    Defendants market Just For Men hair dyes ("Just For Men") not only for application to hair on the scalp, but also for coloring of moustache, beard and side burns.

14.    Just For Men hair dyes contain multiple ingredients, including a chemical known as p-phenylenediamine ("PPD").

15.    PPD is characterized as a coal tar dye because it was originally sourced from coal tar, but in modern use is typically derived from petroleum products.

16.    According to the National Capital Poison Center,

> Even when hair dyes are used as directed, harmful health effects are possible. Up to 25 different ingredients in hair dyes can cause harmful skin effects. One of the main culprits is the primary intermediate PPD. Contact with skin can cause irritation including redness, sores, itching, and burning. Occasionally, allergic reactions occur and involve swelling of the face and neck that causes difficulty breathing. These toxic effects can occur immediately or up to a day after contact with the skin.

17.    As referenced above, skin irritation and allergic reactions are distinct.  Thus, medical experts recognize irritant contact dermatitis and allergic contact dermatitis as separate diagnoses.

18.    According to Mayo Clinic, irritant contact dermatitis is a "non allergic skin reaction [that] occurs when a substance damages your skin's outer protective layer" which can occur after a single exposure to strong irritants, or after multiple exposures to mild irritants.  Conversely, some people develop tolerance to a skin irritant over time.    https://www.mayoclinic.org/diseases-conditions/contact-dermatitis/symptoms-causes/syc-20352742.    Various solvents, detergents, shampoos, plants, fertilizers and pesticides are identified as causes of skin irritation.

19.    By contrast, Mayo Clinic describes allergic contact dermatitis as occurring "when a substance to which you're sensitive (allergen) triggers an immune reaction in your skin. … You may become sensitized to a strong allergen such as poison ivy after a single exposure.  Weaker

allergens may require multiple exposures over several years to trigger an allergy. Once you develop an allergy to a substance, even a small amount can cause a reaction." *Id*.

20.    Common allergens identified by Mayo Clinic includes nickel, medications, balsam of Peru, formaldehyde, plants, airborne substances and personal care products, such as deodorants, body washes and hair dyes.

21.    Hair dye dermatitis reactions can vary from mild, localized contact dermatitis and "disseminated generalized dermatitis to severe life-threatening complications such as contact urticaria/angioedema, rhinitis/bronchospasm/asthma and renal toxicity." Gupta M., et al, "Hair dye dermatitis and p-phenylenediamine contact sensitivity: A preliminary report," *Indian Dermatology Online Journal* (2015): Jul-Aug; 6;(): 241-246.

22.    Scientists have also demonstrated a significant association between vitiligo (destruction of melanocytes resulting in depigmentation of the skin) and contact dermatitis caused by PPD. In fact, an increased rate of vitiligo on the hairline and scalp was observed among vitiligo patients who tested positive for PPD allergy. Lee J-H, et al, "Patch test reactions in patients with the additional diagnosis of vitiligo," *International Society of Dermatology* (2014); 53:187-191.

23.    In 1933 and 1934, medical literature reports in JAMA confirmed serious injuries, including blindness, from the use of eyebrow and eyelash dye containing PPD.

24.    With the passage of the Food, Drug and Cosmetic Act in 1938, Congress prohibited the use of coal tar dyes for the eyelashes or eyebrows. However, Congress did allow coal tar products for use as a hair dye, provided that the following information be included in product labeling:

> Caution—This product contains ingredients which may cause skin irritation on certain individuals and a preliminary test according to accompanying directions should first be made. This product must not be used for dyeing the eyelashes or eyebrows; to do so may cause blindness.

25.     Despite the specific requirement in the Food, Drug & Cosmetic Act that products containing coal tar dyes must contain the Caution quoted above, Defendants' Just For Men products do not comply with this regulation.

26.     Instead, Just For Men Products contain altered language which states:

> Caution:  This product contains ingredients which may cause skin irritation on certain individuals and a preliminary *48 hour skin allergy patch (ALERT)* test according to accompanying directions should be done first. This product must not be used for dyeing the eyelashes or eyebrows - to do so may cause blindness. (emphasis added.)

27.     The inclusion of the phrase "48 hour skin allergy patch (ALERT) test" materially alters the requirements contained in 21 U.S.C. 361 that a test be conducted for "skin irritation."

28.     As described above, unlike skin irritation, allergic contact dermatitis is an immune response to an agent that triggers antibodies called immunoglobulin E (IgE).  The IgE antibodies cause cells to release inflammatory chemicals called histamines, which cause the manifestation of allergy symptoms.

29.     Patch tests to detect allergic reactions are articles intended for use in the diagnosis or prevention of a disease.

30.     Under the FDCA, "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" are drugs.  21 USC S. 201(g)(1)(B).

31.     By marketing Just For Men hair dyes to be used by consumers in a mandatory 48 hour at home "allergy ALERT patch test" prior to every use, Defendants are promoting Just For Men for use as a drug.

32.     Drugs must be approved by FDA prior to introduction to the market.  Manufacturers of drugs which are not specifically identified as safe for over the counter use by FDA must submit comprehensive safety and efficacy data to FDA in order to obtain marketing approval.

33.    Additionally, under federal law, pharmaceutical drugs must be manufactured in accordance with "current Good Manufacturing Practices" ("cGMPs") to assure they meet safety, quality, purity, identity, and strength standards. *See* 21 U.S.C. § 351(a)(2)(B).

34.    The FDA's cGMP regulations are found in 21 C.F.R. Parts 210 and 211. These detailed regulations set forth minimum standards regarding: organization and personnel (Subpart B); buildings and facilities (Subpart C); equipment (Subpart D); control of components and drug product containers and closures (Subpart E); production and process controls (Subpart F); packaging and label controls (Subpart G); holding and distribution (Subpart H); laboratory controls (Subpart I); records and reports (Subpart J); and returned and salvaged drug products (Subpart K).

35.    Any drug not manufactured in accordance with cGMPs is deemed "adulterated" and may not be distributed or sold in the United States. *See* 21 U.S.C. §§ 331(a), 351(a)(2)(B). Drugs are deemed to be adulterated if the manufacturer fails to comply with cGMPs to assure the drugs' safety, quality, purity, identity, and strength and/or if they are contaminated. *See* 21 U.S.C. § 351(a)(2)(A), (B). Federal law prohibits a manufacturer from directly or indirectly causing adulterated drugs to be introduced or delivered for introduction into interstate commerce. *See id.* § 331(a).

36.    A company called SmartPractice Denmark ApS submitted a Biologics License Application for Allergy Patch Testing, which FDA approved in 1994.  The product is called T.R.U.E. TEST, which is a Thin-Layer Rapid Use Epicutaneous Patch Test.

37.    T.R.U.E. TEST is sold as a prescription drug "for use as an aid in the diagnosis of allergic contact dermatitis in persons 6 years of age and older whose history suggests sensitivity to one or more of the 36 allergens and allergen mixes included on the T.R.U.E. TEST panels."  The T.R.U.E. TEST panels consist of three strips of adhesive panels embedded with pre-measured amounts of

6

potential allergens, as well as a negative control. The panels are removed after 48 hours and the

skin is examined for allergic reactions. A second skin examination is conducted at 72 – 96 hours.

38.    The Warnings and Precautions for the T.R.U.E. TEST state:

Acute allergic reactions, including anaphylaxis, may occur.

Sensitization to one or more of the allergens may occur with initial or repeat testing.

Extreme positive reactions, excited skin syndrome, tape reactions, irritant contact dermatitis, persistent reactions, and late reactions at the test site may occur.

39.    PPD is one of the allergens included on the True Test panels. The PPD ingredient for

T.R.U.E. TEST are described as follows:

PPD (purity $\geq$ 97.5%), a blue-black aniline dye, is used to formulate this patch. The gel vehicle is providone. The product is formulated to contain 80 µg/cm² of PPD, which corresponds to 65 µg of PPD per patch. This dye is found most often in permanent and semipermanent hair dyes.

40.    After the physician applies the PPD test strips, the patient returns at 48 hours and again at

72 - 96 hours for the physician to evaluate the results. Interpretation instructions to the physicians

list 6 possible readings:

?        (doubtful reaction: faint macular erthyema only)

+        (weak positive reaction: non-vesicular with erythema, infiltration, possibly pupules)

++       (Strong positive reaction: vesicular, erythema, infiltrations papules)

+++      (extremely positive reaction: bulbous or ulcerative reaction

-        (Negative reaction)

IR       (Irritant reaction: Postules as well as patchy follicular or homogenous erythema without infiltrations are usually signs of irritation and do not indicate allergy.)

41.     Physicians are specially trained to interpret skin reactions and to distinguish between

irritant reaction and allergic reactions as described above, based on published criteria. *See e.g.*,

Wilkinson DS, et al, "Terminology of contact dermatitis," *Acta Derm Venereol* 1970:50:287-292. (Establishing the International Contact Dermatitis Research Group standardized readings for distinguishing irritant from allergic reactions.)

42.    The T.R.U.E. TEST also indicates that false negatives may occur due to inadequate adhesion of the compound to the test site or premature evaluation, and that false positives may occur "when an irritant reaction cannot be differentiated from an allergic reaction. A positive test reaction should meet the criteria for an allergic reaction."

43.    Under Warnings and Precautions, physicians administering the T.R.U.E. TEST are advised: "A negative patch test reaction, followed by a positive reaction 10 to 20 days after panel application, may indicate active sensitization. Active sensitization is confirmed upon retesting with a positive reaction occurring at the 72 and/or the 96 hour reading. … The safety and effectiveness of repetitive testing with T.R.U.E. Test is unknown."

44.    Physicians are also warned about "Persistent Reactions: Positive reactions may persist from 7 days to months after panel application," and "Late Reactions: Positive reactions may occur 7 to 21 days after application of the panels."

45.    Finally, physicians are warned regarding "Repeat Testing: The safety and efficacy of repetitive testing with T.R.U.E. TEST is unknown. Sensitization or increased reactivity to one or more of the allergens may occur …. If patients undergo a second series of patch tests immediately, select a new test site for T.R.U.E. TEST application. Alternatively, the same site may be retested after a 3-week clearing period, provided the site remains free of conditions that affect test results."

46.    Physicians are also advised that the impact of a patient's use of systemic antihistamines or cyclosporins upon test results is unknown, and that use of oral steroids could cause false negative results.

47.    Detailed data from ten clinical trials in adults and 2 pediatric studies designed to authenticate the reliability of the T.R.U.E. TEST results are provided in the product labeling for physicians.

48.    In contrast to the T.R.U.E. TEST, which is a strictly controlled, carefully administered, well validated allergy patch test approved by FDA as a safe and effective prescription drug to be administered by a trained physician, the Just For Men "ALERT" skin allergy patch test is an unregulated, uncontrolled, open, random experiment requiring self-administration of strong allergens by untrained consumers for diagnostic purposes.

49.    First, the "test" described by Defendants is not actually a patch test.  Patch tests are allergy tests in which an allergen is applied directly to the skin and then covered *with a patch* to protect it from deterioration or contamination.  The patch is then removed after a specified time period (typically 48 hours) to measure skin reactions, and then recovered and examined again at 72 to 96 hours.

50.    Unlike a patch test for allergies, Defendants instruct: "**DO NOT WASH OR COVER TEST AREA FOR 48 HOURS.**"

51.    As such, due to the fact that the application area is uncovered, Defendants' self-described "Patch Test" instead is an "Open Test."   See e.g., Sumanth, K. et al, "Para-phenylenediamine allergy: current perspectives on diagnosis and management," *Journal of Allergy and Asthma* 2017:10, 9-15 (2017.)

52.    Defendants' Open Test instructs consumers to "mix small, equal parts of the Colour Base and the Colour Developer in the mixing tray with the plastic end of the brush; … Apply mixture with a cotton ball or swab to a test area the size of a coin on the inside bend of your elbow."

9

53.     As such, the Just For Men ALERT allergy test instructs consumers to mix up an undefined amount of two products, apply the mixture at an unknown thickness to an area the size of an unspecified coin, and to leave the area uncovered and unwashed, thereby subjecting the site to contamination or deterioration of test product, for 48 hours.

54.     Defendants' Open Test thereby exposes consumers to varying, unregulated amounts of strong allergens in Just For Men Hair dyes, including potentially high ranges of exposure to PPD, as well as other allergens and sensitizers.

55.     Upon information and belief, some Just For Men Hair dye color base tubes contain more than 3.75% PPD by weight.  Even if consumers attempt to combine a "small" sample from the color tube with an "equal" amount of color developer, consumers could be creating a mixture that contains 1.8%, or even more, PPD.

56.     Experts recognize that: "PPD 1% patch testing can cause active sensitization."  Sumath, "Para-phenylenediamine allergy: current perspectives on diagnosis and management," *Journal of Asthma and Allergy*, 2017:10 9-15.  As to open testing with hair dyes prior to application, "it is possible ... that this [open] testing is adding further cutaneous exposure to PPD and may play a part in increasing the risk of PPD sensitization." *Id*.

57.     Experts estimate that a consumer self-application of a blob of hair dye in the open test method would expose the individual to approximately 2300 $\mu g/cm^2$ PPD, a level which is more than tenfold higher than that used in standardized diagnostic patch tests.  In fact, this is 35 times higher than the exposure to PPD in the T.R.U.E. Test.

58.     Not only is the amount of allergen applied excessive, but also the frequency of application creates a dramatically increased risk of sensitization.  Defendants specify, in bold, **"You MUST**

**do this test 48 hours ahead of EACH and EVERY use in order to minimize the risk of an allergic reaction."**

59.    There is no scientific basis to support Defendants' assertion that repeat testing minimizes the risk of allergic reaction.

60.    To the contrary, the best evidence demonstrates that the cumulative number of exposures is an important factor in determining an individual's risk of having an allergic reaction to a chemical.

61.    As such, repeat hair dye testing only increases the risk of sensitization and a resulting allergic reaction by increasing the cumulative number exposures an individual is subjected to.

62.    Likewise, repeated full hair dye application would similarly increase an individual's cumulative number of exposures and thus enlarge the ultimate risk of sensitization and resulting reaction.

63.    PPD is categorized as a "Category A" allergen, indicating it has a "proven strong contact allergenic effect in humans after short and/or almost negligible exposure."  Schlede E., et al, Chemical substances and contact allergy - 244 substances ranked according allergenic potency," *Toxicology* 2003: 193: 219-259.

64.    In a PPD sensitization study of healthy subjects conducted by FDA, more than half the participants became sensitized through exposure to samples containing 1% PPD.  Marzulli, et al., "The use of graded concentrations in studying skin sensitizers: experimental contact  sensitization in man," *Food Cosmet Toxicol* 1974: 12: 219-227.

65.    Expert dermatologists conclude that PPD is a strong sensitizer that creates a high risk of allergic response after repeated exposure:

> PPD is an extreme sensitizer, and allergy skin testing with this chemical should be carefully performed, owing to the recognized risk of active sensitization.  The

concentration of PPD in hair dye products is restricted [in Europe] to a maximum of 2% PPD on the head, calculated as free base, but very high exposure concentrations might be applied in the hair dye self-test. Furthermore, other sensitizers, such as PTD (maximum [in Europe] 4% on the head), and several other extreme and potent sensitizers are used in hair-dyes, and may cause sensitization following repeated exposure. Experimental studies have clearly shown that the risk of sensitization increases with allergen dose per unit area, frequency of exposure, duration of exposure, occlusion, the presence of penetration-enhancing factors, and impairment of skin barrier function, and is related to anatomical site. The hair dye self-test carries a significant risk of sensitization ...

Thyssen JP, et al., "Self-testing for contact sensitization to hair dyes-scientific consideration and clinical concerns of an industry-led screening programme," *Contact Dermatitis* (2012) 66: 300-311.

66.    The Thyssen article continues to note that applying a small amount of a skin sensitizer does not reduce the risk of an allergic response. To the contrary, Tbyssen explains:

It is important to understand that, as it is the dose of allergen per unit area that is critical for sensitization, application of an allergen to a small skin area does not diminish the risk of sensitization when compared with a larger skin area with the same dose per area. Hence, even though the self-test is applied to a small skin area, it still carries the same risk of sensitization. ... Thus, repeated exposure to low doses of contact sensitizers, as occurs when the hair self-test is performed, may considerably increase the risk of sensitization.
*Id.*

67.     Noting the potential frequent use of hair dye by consumers, Thyssen concludes:

In a worse case scenario, an individual performing the hair dye self-test every fourth week applies up to 2% PPD on the skin each time, in addition to other sensitizers in the product. Such gross exposures strongly contrast with the norms of clinical diagnostic patch testing, when the practice is to attempt to reduce repeated allergen exposures from patch testing, owing to the risk of active sensitization.
*Id.*

68.    An additional risk for sensitization to PPD among consumers is that Just For Men's darker hair dyes contain greater percentages of PPD than the lighter hair dyes. In a study by Dickel, et al., "Comparison of Patch Test Results with a Standard Series Among White and Black Racial Groups," American Journal of Contact Dermatitis, Vol. 12, No. 2 (June, 2001) 77-82, the authors

reported a PPD sensitization rate of 21.2% among black men tested compared to 4.2% among white males, a highly statistically significant result ($P = 0.00599$.)

69.    Dickel and his co-authors concluded: "Our data are in general agreement with the belief that PPD... is one of the most significant contactants in the black population.  Higher concentration of PPD... are present in hair colors used by black patients."

70.    Because the darker shades of Just For Men dyes contain higher percentages of PPD, consumers using these products for skin testing and/or as a hair dye are at greater risk of sensitization.

71.    Moreover, consumers have no training on reading test results, which is a subject upon which physicians are educated, and the results are read only at 48 hours, without the 72 to 96 hour follow-up conducted in physician testing.  Further, interpretation of whether skin is red or irritated can be more difficult when a consumer's skin is of a darker complexion.

72.    Nonetheless, Defendants instruct consumers:

> If you have no reaction on the unwashed patch test site after 48 hours, go ahead with full application of this product.  Note:  If at any time during the testing, you see redness or rash or feel burning, itching or other irritation, you may be allergic.  STOP!  Wash area immediately and keep it uncovered.  You must not use this product or any other hair colouring.

73.    Thus Defendants impose upon consumers, with no training, no guide for interpretation, no control over the amount, area or actual extent of product exposure, an inadequate observation time, and no negative control for comparison, the responsibility for determining whether they are having a reaction to the product.  Further Defendants do not instruct consumers to consult their physician if they experience the listed symptoms during the 48 hour allergy test.

74.    Defendants also fail to instruct consumers to discontinue the use of systemic antihistamines, cyclosporines and oral steroids several days prior to conducting the open allergy

13

test because use of these medications could cause a false negative result.  Moreover, even if such a warning were made, many consumers are unlikely to recognize whether the drugs they are taking belong to these pharmaceutical classes, or further it may not be safe for them to discontinue these medications.

75.      In summary, Defendants' instructions for use are false and misleading in many particulars, inasmuch as the Skin Allergy Patch (ALERT) Test is not a skin irritation test but rather an allergy test, is not a patch test but rather an open test, does not reduce the risk of allergic reaction but rather increases it, provides vague and incomplete instructions, and constitutes an unlawful marketing of hair dye as a drug, (i.e. for the purpose of diagnosing, mitigating or preventing a disease.)

76.      In fact, expert dermatologists concur that: "In the hair dye allergy self-test, one must conclude that the hair dyes are used as medicines rather than cosmetics."  Thyssen, *Contact Dermatitis*, 66 at 309.

77.      As Thyssen states: "Repeated hair dye application on the skin with the consumer self-test may, in its current form, be compared with experimental human sensitization tests."  Id. at 308.

78.      Sensitization to PPD is known to be increasing across populations worldwide.  A Saudi Arabia study indicates that PPD was the leading allergen among men undergoing skin patch testing using the T.R.U.E. TEST from 2012 through 2015, at a rate of 37.5%.  Further, reactivity to PPD in men and women in Saudi Arabia increased from 5.4% in 1996 to 9.2% in 2012.  Shakoor Z., et al, "Screening for skin-sensitizing allergens among patients with clinically suspected dermatitis," *Saudi Med J* 2017: Vol.38 (3) 922-927.

79.      The increasing rate of sensitization to PPD is attributed by experts to increased use of hair dyes and tattoos.

14

80.    Defendants expose consumers to this human experimentation for no confirmed benefit, as they concede in the following Disclaimer: "This test is not a guarantee of avoiding future allergic reaction.  For some users, frequent use of haircolouring products can increase the risk of allergic reaction.  This test represents an important precaution.  However, be aware that even if a test has been carried out, you may still experience an allergic reaction when you use this product."

81.    Defendants fail to reveal in this Disclaimer that their allergy test itself creates a present, grave risk of sensitization to PPD and other hair dye allergens.

82.    Repeated exposure to Just For Men from use as a hair dye and/or in an "allergy patch test" increases the risk of a chronic irritant reaction.  Potential irritants in hair dye, such as PPD or other chemicals, can trigger a toxic response from repeated product use and/or from repeated "patch testing."

83.    As confirmed in the published literature, Defendants are aware that consumers are unlikely to conduct the open allergy test (misnamed the allergy patch test) as instructed by Defendants. Instead, Defendants are aware that due to the impracticalities of correctly applying the prescribed open test for allergies, (such as conducting the test 48 hours in advance of hair dye usage; keeping the area dry and uncovered  and therefore not bathing for 2 days; mixing and applying the correct amount of product when no amounts are specified and no measuring implements are provided; and interpreting the results with no guide and no training), as well as the lack of understanding by consumers of the seriousness of adverse effects that can result from using Just For Men hair dyes, few consumers will successfully complete the test as described by Defendants.

84.    Moreover, Defendants are aware that the prescribed "patch testing" can be futile, providing no protection at all against an allergic or irritant adverse reaction, and in fact could even increase the risk of an adverse response to Just For Men hair dyes.

85.     Defendants therefore know that the instructions for Just For Men do not render the product safe for use, because the instructions are highly impracticable and unlikely to be followed correctly, are flawed and misleading, and even if the prescribed allergy testing is conducted by consumers, the test in fact provides no assurance that an allergic or other adverse response will be detected or avoided.

86.     Defendants are aware that the product has not been rendered safe through its instructions.

87.     Even if the Just For Men hair dye products' instructions provided by Defendants were adequate to prevent or reduce the risk of injury, the products' accompanying warnings fail to adequately appraise consumers of the risks/injuries that may result from use of the product and/or failure to follow the instructions for use.

88.     Defendants fail to provide consumers with sufficient warnings to appreciate the significance of the medical risks posed by the products.   Unlike some trained medical professionals, lay people do not have the education, training, or expertise to understand the risks of allergic and irritant reactions posed by these products.

89.     Defendants are aware that consumers do not fully comprehend the risk that exposure to Just For Men hair dye containing PPD and other allergens/irritants can cause widespread and/or systemic reactions upon initial or any subsequent use, including but not limited to itching, rash, hives, blistering of skin, burning sensation, shortness of breath, restriction of airways or difficulty breathing, edema, sudden drop in blood pressure, flushing, and anaphylactic shock.

90.     Consumers have no understanding and no frame of reference (nor are they provided any by Defendants) to appreciate that these reactions can cause permanent, disfiguring scarring on their faces or in other highly visible or widespread areas.

91.     As such, consumers are unlikely to understand based upon Defendants' warning that Just For Men hair dye "has been associated with skin depigmentation (skin lightening or loss of skin colour)," that they risk permanent, disfiguring scarring or loss of pigmentation due to use of Just For Men Hair dye.

92.     Despite Defendants' awareness of lay consumers' limited knowledge, Defendants failed to provide warnings that could be understood by lay consumers.

93.     Defendants fail to warn consumers that a vitiligo reaction triggered by use of Just For Men hair dyes can result in complete and permanent depigmentation of the entire surface area of the face or scalp in which Just For Men hair dye is applied, such as complete depigmentation of the entire moustache area, or complete depigmentation of the entire beard area.

94.     Defendants also fail to disclose that once triggered, a vitiligo response can spread to areas never directly exposed to Just For Men Hair dye.

95.     Similarly, Defendants fail to warn consumers that hyperpigmentation, redness, rash or scarring from an allergic reaction to Just For Men can result in large scale, permanent discoloring of facial or other areas, often corresponding with the entire areas in which Just For Men hair dye was applied or contacted the skin, and that such reactions can spread to other areas.

96.     Defendants fail to disclose that in addition to allergic reactions to PPD or other components of Just For Men hair dye, consumers may suffer skin irritation reactions, which as previously noted can happen upon initial exposure, or can be exacerbated by chronic exposure to an irritant chemical.

97.     Defendants also failed to provide pictorial warnings to convey the risks posed by their products, such as photos of the potential injuries that may result from their use of Just For Men.

17

98.    The Just For Men hair dyes are more dangerous than an ordinary consumer would expect, due to the highly increased risk of sensitization to allergens in the Just For Men Hair dyes, the potential for serious allergic response and the risk of scarring, vitiligo and other significant permanent injury.

99.    The Just For Men hair dyes are more dangerous than an ordinary consumer would expect, because they expose consumers to numerous chemical irritants, creating a significant potential for a skin irritant reaction and the risk of scarring, vitiligo and other significant permanent injury.

100.    Other chemicals are available for hair dye that are much less allergenic and much less caustic than the products used in Just For Men.    The chemicals 2-methoxymethyl-para-phenylenediamine, paratoluenediamine and henna are among the safer alternatives to PPD.

## NAMED PLAINTIFFS' USE OF JUST FOR MEN

*Plaintiff Ray Du Boc Ali*

101.    Plaintiff Du Boc Ali purchased a box of Just For Men Black hair dye on May 2nd 2015.

102.    Prior to May 2015, Plaintiff Du Boc Ali had used hair dye products without injury.

103.    On or about May 21, 2015, Plaintiff Du Boc Ali applied a small amount of the product on his beard area to test his response to the product. After waiting roughly 10 minutes and having no reaction, Plaintiff Du Boc Ali applied the product to his entire beard as directed.

104.    Thereafter, Plaintiff Du Boc Ali began experiencing an itching sensation. Upon examining his face he noticed small skin flakes in his beard. As more time passed, his face began to sting, burn, and swell.

105.    Over the following days the skin on his face continued to become hard and scabbed over.

106.    As a result of this reaction to the Just For Men hair dye, Plaintiff Du Boc Ali was left with permanent skin discoloration and scarring as shown in the photographs below.

 

107.   Plaintiff Du Boc Ali contacted Defendants to inform them of his injury.

108.   Defendants sent a representative to Plaintiff Du Boc Ali's home.

109.    The representative took pictures of Plaintiff Du Boc Ali's face and informed him that they would "take care of the situation" and provide him with a dermatologist.

110.   Defendants never followed up with Plaintiff Du Boc Ali and did not provide him with the promised medical care.

111.   To this day, Plaintiff Du Boc Ali's skin remains discolored as photographed above.

112.   Prior to his last use of Just For Men Hair dye, Plaintiff Du Boc Ali did not understand that the use of the product could cause permanent, disfiguring scarring and loss of pigmentation across the entire area of exposed skin.

113.    As a direct and proximate result of his use of Just For Men hair dye. Plaintiff Du Boc Ali has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment and will continue to suffer physical limitations, pain, injury, damages, and harm in the future, including but not limited to permanent scarring and/or discoloration of his facial skin.

114.    As a direct and proximate result of his use of Just For Men hair dye, Plaintiff Du Boc Ali has suffered significant mental anguish and emotional distress and will continue to suffer mental and emotional distress in the future.

115.    As a direct and proximate result of his use of Just For Men hair dye, Plaintiff Du Boc Ali has also incurred medical expenses and other economic harm, and will continue to incur such expenses and other economic harm in the future.

*Plaintiff Izell McCloud*

116.    Plaintiff McCloud is a resident and citizen of Palatka Florida in Putnam County, Florida.

117.    Plaintiff McCloud purchased a box of Just For Men Mustache and Beard Real Black hair dye in November 2015.

118.    Prior to November 2015, Plaintiff McCloud had used Just For Men hair dye without injury.

119.    In approximately November 2015, Plaintiff McCloud applied a small amount of the product on the inside of his left forearm to test his response to the product. Plaintiff McCloud's forearm never reacted to or provided any indication of a reaction even 48 hours after the test application.

120.    Subsequent to testing the Just For Men hair dye on his forearm and seeing no reaction after several minutes, Plaintiff McCloud applied the product to his beard and goatee as directed.

121.    After only a few minutes, Plaintiff McCloud began experiencing burning and itching at the areas of application. He immediately washed the product out of his goatee.

20

122.    Over the next several hours, his skin underneath where he applied the Just For Men continued to itch, burn, crack, and peel.

123.    After this reaction, the skin on his chin and lower lip was completely discolored in the areas where he applied the Just For Men hair dye.



124.    Plaintiff McCloud thereafter contacted Defendants to inform them of his injury.

125.    Defendants referred Plaintiff McCloud to a dermatologist.

126.    On January 5, 2016 Plaintiff McCloud visited the dermatologist referred by Defendants.

127.    Defendants compensated the dermatologist for Mr. McCloud's visit.

128.    Upon information and belief, Defendants sough to discourage Plaintiff McCloud from attributing his injury to his use of Just For Men.

129.    Plaintiff McCloud was told by the doctor compensated by Defendant Combe that "it is difficult to tell whether this is coincidental and he has undergone a loss of skin pigment because of a condition called vitiligo, or whether the product called 'Just For Men' caused the loss of skin pigment and de-pigmentation to occur" and "given the fact that this is vitiligo and a loss of melanin, most likely it is not related to the product at all. However, there would have to be a lot of research done to determine if, in fact, certain products have been known to cause loss of melanin in the skin."

130.    In reality, it is well accepted in the medical and scientific community (and has been for decades) that hair dyes, including Just For Men, can cause a of loss of melanin in the skin.

131.    To this day, Plaintiff McCloud's skin remains discolored as shown in the above photograph.

132.    Prior to his last use of Just For Men Hair dye, Plaintiff McCloud not understand that the use of the product could cause permanent, disfiguring scarring and loss of pigmentation across the entire area of exposed skin.

133.    As a direct and proximate result of his use of Just For Men hair dye, Plaintiff McCloud has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment and will continue to suffer physical limitations, pain, injury, damages, and harm in the future, including but not limited to permanent scarring and/or discoloration of his facial skin.

134.    As a direct and proximate result of his use of Just For Men hair dye, Plaintiff McCloud has suffered significant mental anguish and emotional distress and will continue to suffer mental and emotional distress in the future.

135.    As a direct and proximate result of his use of Just For Men hair dye, Plaintiff McCloud has also incurred medical expenses and other economic harm, and will continue to incur such expenses and other economic harm in the future.

### Plaintiff Clemon Williams

136.    Plaintiff Clemon Williams is a resident and citizen of Wake Forest in Franklin County, North Carolina.

137.    Plaintiff Williams purchased a box of Just For Men Mustache and Beard Dark Brown hair dye on or about December 20, 2015.

138.    On or about February 23, 2016, Plaintiff Williams applied a small amount of the product on his left forearm and right lower to test his response to the product. After roughly 48 hours with no reaction, Plaintiff Williams proceeded to apply the product to his beard area as directed.

139.    A few days later on approximately February 27, 2016, Plaintiff Williams' face became irritated and itchy. The following day his face also began to swell.

140.    On February 29, 2016, Plaintiff Williams' facial swelling increased, his skin began to ooze, and he was in severe pain. As a result, Plaintiff Williams decided that morning go to the emergency room.

141.    Plaintiff Williams was admitted to the hospital for treatment of his reaction.

142.    At the hospital Plaintiff Williams was found to have swelling of his neck and face, denuded and thickened skin, and cellulitis of the face secondary to use of hair dye.



143.    Plaintiff Williams was treated with wound care, antibiotics, pain killers, and antihistamines, incurring thousands of dollars in medical bills.

144.    On March 3, 2016, after four days in the hospital, Plaintiff Williams was still noted to have denuded skin in his beard area sand some swelling, but was found to be in stable of enough condition to be discharged

145.    Plaintiff Williams now suffers from permanent injuries including significant scarring and skin discoloration.

146.    Prior to his use of Just For Men Hair dye, Plaintiff Williams did not understand that the use of the product could cause systemic allergic reactions requiring hospitalization, as well as permanent, disfiguring scarring and/or loss of pigmentation to exposed areas of skin.

147.    As a direct and proximate result of the defective Just For Men hair dye Plaintiff Williams has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment

and will continue to suffer physical limitations, pain, injury, damages, and harm in the future, including but not limited to permanent scarring and/or discoloration of his facial skin.

148.    As a direct and proximate result of the defective Just For Men hair dye Plaintiff Williams has suffered significant mental anguish and emotional distress and will continue to suffer mental and emotional distress in the future.

149.    As a direct and proximate result of the defective Just For Men hair dye, Plaintiff Williams has also incurred medical expenses and other economic harm, and will continue to incur such expenses and other economic harm in the future.

### CLASS ACTION ALLEGATIONS AND COMMON ISSUES OF FACT AND LAW

150.    The Named Plaintiffs propose to act as Class Representatives and bring this action on their own behalf and on behalf of similarly situated plaintiffs.

151.    The Class Representatives seek, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certification of a nationwide class under Fed R. Civ. P. 23 as follows:

> All residents of the United States who purchased a Just For Men hair dye product for personal use and experienced an allergic or irritant reaction within 96 hours of use of the Just For Men product.

152.    Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors, as well as any class members who have previously released their claims against Defendants.

153.    The members of the proposed Class are so numerous that joinder of all members is impracticable.  The total number of class members is presumed to be in the thousands, although the exact number of class members is unknown.

154.    Burg Simpson Eldredge Hersh & Jardine PC currently represents over 140 individuals who meet the Class definition. (See Exhibit. A, List of Absent Class Members represented by Burg Simpson Eldredge Hersh & Jardine PC.)

155.    The Class Representatives have significant claims and will fairly and adequately protect the interests of the Class. The class representatives have have retained attorneys, including Janet G. Abaray and the firm of Burg Simpson Eldredge Hersh & Jardine PC, who are experienced in prosecuting class action claims and who will adequately represent the interests of the Class. Neither the Plaintiffs nor their Attorneys have any conflicts of interest that will interfere with the maintenance of this class action.

156.    Numerous common questions of law and fact impact all of the Class members, as has been fully described above.

157.    The claims and defenses of the Plaintiffs are typical of the claims and defenses of the Class, in that each has used a Just For Men hair dye product, reviewed the product warnings and instructions, failed to understand the magnitude and nature of the risk of harm from use of the product, and has suffered injury as a direct result of said product use.

158.    The following questions of law and fact are common to each proposed Class Member and predominate over questions that may affect individual Class Members:

a.    Whether Defendants acted negligently and/or fraudulently in the design, testing, marketing and distribution into the stream of commerce of Just For Men products.

b.    Whether Defendants engaged in marketing and promotional activities which were likely to deceive consumers by omitting, suppressing, and/or concealing the true efficacy and safety of Just For Men products;

c.    Whether Defendants omitted, suppressed, and/or concealed material facts concerning Just For Men products from consumers;

d.    Whether the foreseeable risks of the Just For Men products exceeded the benefits associated with their design or formulation;

e.  Whether Defendants adequately warned consumers of the risks associated with the use of Just For Men products;

f.  Whether the Just For Men products manufactured and sold by Defendants conformed to Defendants' express representations;

g.  Whether the Just For Men products were of merchantable quality and safe for their intended use;

h.  Whether Just For Men products were more dangerous than an ordinary consumer would expect; and

i.  Whether the Class has been damaged and, if so, the extent of such damages.

159.  Further, certification of a common issue pursuant to Fed. R. Civ. P. 23(c)(4), would eliminate any concern that individual issues would predominate over common issues and thereby enhance the manageability of the class.  Findings on these common issues by the Jury and/or the Court will significantly reduce the cost of litigation for the named Plaintiffs and Class members, and will significantly enhance judicial economy.

160.  Plaintiffs allege on their own behalf and on behalf of the Class of similarly situated consumers, including but not limited to those identified on Ex. A, that the following issues of fact or law are common to all members of the Class and can be resolved on behalf of the Class through Rule 23(c)(4):

Common Issue 1:  Do Just For Men hair dyes contain chemicals known to be skin irritants, including but not limited to PPD?

Common Issue 2:  Do Just For Men Hair dyes contain chemicals known to be contact allergens, including but not limited to PPD?

Common Issue 3:  Did Defendants fail to comply with the requirements of 21 U.S.C. §361, when they inserted the requirement for a "preliminary 48 hour skin allergy patch (ALERT) test" into the warning required by statute, rather than providing directions for a skin irritation test, and thus render Just For Men hair dyes adulterated and/or misbranded products under the Food, Drug & Cosmetic Act?

Common Issue 4:    Does Defendants' instruction to use Just For Men hair dye to conduct a "skin allergy (ALERT) patch test" constitute the promotion of its product to treat, diagnose or mitigate a disease, thus making it an unapproved drug under the terms of the Food, Drug & Cosmetic Act?

Common Issue 5:    Does Defendants' instruction to use Just For Men hair dye to conduct a "skin allergy (ALERT) patch test," when in reality the instructions provide for an "open test," constitute false and misleading information?

Common Issue 6:    Does Defendants' instruction to conduct its "preliminary 48 hour skin allergy patch (ALERT) test" before each and every use" endanger the health of consumers by increasing the risk of sensitization to allergens in its products?

Common Issue 7:    Does Defendants' instruction to conduct its "preliminary 48 hour skin allergy patch (ALERT) test" before each and every use in order to minimize the risk of an allergic reaction" mislead consumers because repeated exposures to a potential allergen in fact increase, rather than decrease, the risk of allergic reaction?

Common Issue 8:    Did Defendants fail to provide instructions for a skin irritant test for its Just For Men hair dyes to consumers?

Common Issue 9:    Can Just For Men cause serious adverse reactions and injury, including but not limited to severe allergic reactions, permanent scarring and skin discoloration, and permanent depigmentation of the skin?

Common Issue 10:    Are Defendants' instructions for use inadequate to prevent harm from use of its products, because Just For Men cause serious injury, including but not limited to severe allergic reactions, permanent scarring and skin discoloration, and permanent depigmentation of the skin, even if the products' instructions are followed?

Common Issue 11:    Did Defendants fail to adequately warn consumers of the risks associated with the use of Just For Men hair dye products, including but not limited to the incidence and nature of the risk of adverse reactions to Just For Men hair dyes, which can include severe allergic reactions, permanent scarring, permanent skin discoloration, and permanent depigmentation of the skin?

Common Issue 12:    Do the risks posed by Just For Men hair dye products manufactured, designed, sold, supplied, and/or distributed by Defendants outweigh the utility of the products?

| Common Issue 13: | Are the Just For Men hair dye products manufactured, designed, sold, supplied, and/or distributed by Defendants more dangerous than an ordinary consumer would expect? |
|---|---|
| Common Issue 14: | Do safer hair dye alternatives exist, including but not limited to those that do not include PPD? |
| Common Issue 15: | Do the Just For Men hair dye products manufactured, designed, sold, supplied, and/or distributed by Defendants conform to Defendants' express representations? |
| Common Issue 16: | Are the Just For Men hair dye products manufactured, designed, sold, supplied, and/or distributed by Defendants of merchantable quality and safe for their expected use/purpose? |

161.   A finding on the above issues by the trier of fact will materially advance the action on behalf of all members of the class.

162.   Upon resolution of the above issues by the trier of fact, the Class members need only prove specific causation and damages suffered as a result of their use of Just For Men hair dye, to be presented in an efficient manner as approved by the Court.

163.   Plaintiffs and the Class reserve the right to redefine or subdivide the Class, and/or the requests for relief, as permitted by Fed. R. Civ. P. 23.

164.   A class action provides a fair, efficient, and superior method for the adjudication of this controversy.

165.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because prosecution of individual claims by the class members is impractical as the costs of prosecution may exceed the amount that individual class members have at stake. Serial adjudication in numerous venues is furthermore not efficient or timely. Judicial resources will be unnecessarily depleted by resolution of individual claims.

166.   Certain members of the Class are ascertainable through Defendants' records, and other Class Members can be reached through publication of notice.

## TOLLING OF THE STATUTE OF LIMITATIONS

167.    The filing of this class action Complaint serves to toll and preserve the claims of the Class members, including but not limited to members identified in Ex. A, and any other purchasers of Just For Men who were similarly injured by Defendants' wrongful and unlawful acts, and the commencement of this action suspends the applicable statutes of limitations as to all asserted members of the Class and to those persons that, if a district judge declines to certify a class or certifies a class that excludes particular persons, would have been members or parties to the action as pled.

168.    Defendants at all relevant times knew of should have known of the problems and defects with Just For Men hair dye products, and the falsity and/or misleading nature of Defendants' statements, representations and warranties with respect to Just For Men hair dye products. Defendants concealed and failed to notify named Plaintiffs, the Class members, and the public of such defects.

169.    Any applicable statute of limitations has therefore been tolled by the filing of this class action Complaint as well as by Defendants' knowledge, active concealment and/or denial of the facts alleged herein, which behavior is ongoing.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY DESIGN DEFECT

170.    Named Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

171.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Just For Men hair dyes.

172.    The Just For Men hair dyes manufactured and supplied by Defendants were defective in

design or formulation in that, when they left the hands of the Defendants, they were more dangerous than an ordinary consumer would expect when used in a foreseeable manner, thereby posing a substantial likelihood of harm to users.

173.    Alternatively, the Just For Men hair dyes manufactured and supplied by Defendants were defective in design or formulation in that the foreseeable risks of the products exceeded the benefits associated with their design or formulation.

174.    The Just For Men hair dyes used by the Named Plaintiffs and Class Members were not materially altered prior to their use.

175.    Defendants defectively designed Just For Men hair dyes by including the unreasonably dangerous ingredient PPD, an extreme skin sensitizer, rather than using safer chemical alternatives found in other hair dye products.

176.    Further, Defendants defectively designed Just For Men hair dyes by including excessively high levels of the unreasonably dangerous ingredient PPD, an extreme sensitizer, rather than using safer, lower levels of PPD found in other hair dye products.

177.    Further, Defendants defectively designed Just for Men hair dyes by including multiple other chemicals that increase the likelihood of an adverse reaction to PPD, such as skin sensitizers including lauryl lactate.

178.    Defendants defectively designed Just for Men hair dyes by including multiple chemical components that individually or in combination cause skin irritation and allergic reactions.

179.    Defendants defectively designed Just for Men hair dyes because the unreasonably high rate of adverse allergic and/or dermatological reactions to the products in the general populace greatly outweighs the cosmetic benefit of hair coloring, which also renders the products more dangerous than an ordinary consumer would expect.

180.    The risks of Just for Men hair dyes are even greater among those Class members using darker colors of Just for Men hair dye, which contain higher levels of PPD and other chemicals than lighter colors, creating an even greater outweighing of the risks over the cosmetic benefits of hair coloring, and rendering the products even more dangerous than an ordinary consumer would expect.

181.    Just For Men hair dyes are further defectively designed because the patch test as designed and recommended by Defendants is inadequate to prevent harm to consumers, and in fact it increases the risk of an adverse reaction to the products rather than minimizing the risk.

182.    Just for Men hair dyes are further defectively designed because the patch test as designed and recommended by Defendants cannot be accurately conducted or interpreted by consumers and therefore it does not adequately mitigate the risk of harm from the products.

183.    As a direct and proximate result of their use of Just For Men hair dye products, as defectively designed and marketed by Defendants, Named Plaintiffs and Class Members have incurred damages, including but not limited to disfiguring permanent injury, other physical injury, mental and emotional distress, medical expenses, lost earnings and other economic loss, and will continue to suffer said damages in the future.

184.    Defendants acted and/or failed to act maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## DEFECT DUE TO INADEQUATE WARNING OR INSTRUCTION

185.    Named Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

186.   As manufacturers of Just For Men, Defendants are held to the level of knowledge of an expert in the field of hair dyes.

187.   Defendants had a duty to provide adequate warnings and instructions to consumers regarding its Just For Men hair dyes, based upon their superior knowledge of the risks as experts in hair dyes.

188.   The Just For Men manufactured and supplied by Defendants were defective due to inadequate warning or instruction because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers of such risks and/or failed to provide adequate and non-misleading instructions to avoid the risk, as previously described.

189.   Defendants inadequate warnings or instructions include but are not limited to the following:

    a.   Defendants knew or in the exercise of reasonable care should have known that Just for Men hair dyes marketed to be used repeatedly as a cosmetic hair product created a significant risk of severe allergic and irritant reactions, physical injury and permanent scarring, the magnitude of which ordinary consumers would not understand or appreciate;

    b.   Defendants failed to provide the warning that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of Just For Men, in light of the likelihood that the product would cause the harm suffered by Named Plaintiffs and Class Members and in light of the likely seriousness of that harm;

c.      Defendants provided inaccurate and misleading instructions by suggesting that Just For Men hair dye could be used by consumers in a self test for allergic reactions, which constitutes unauthorized sale of the product as a drug (i.e. for medicinal purposes);

d.      Defendants provided inadequate instructions for use in that the recommended "patch test" implied that any safety risks could be mitigated, when in fact the "patch test" was impractical, unrealistic and uncontrolled, increased the risk of harm and created a false sense of safety for users;

e.      Defendants further provided inadequate warnings and instruction by failing to impress upon consumers that any minor allergic or irritation reaction to Just For Men hair dyes could increase upon repeated exposures (including repeated patch tests), thereby placing consumers at greatly increased risk of harm from continual use of Just For Men hair dye products;

f.      Defendants further provided inadequate warning by failing to disclose that darker colored Just For Men hair dyes contained higher levels of active ingredients, including PPD, thus placing persons using darker hair colors, such as African Americans, at greater risk of physical injury.

190.    The Just For Men manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of Just For Men, Defendants failed to provide an adequate warning to consumers of the product, knowing the product could cause serious injury as set forth herein.

191.    As a direct and proximate result of their use of Just For Men hair dye products, as

defectively designed and marketed by Defendants due to failure to provide adequate warnings or instruction, Named Plaintiffs and Class Members have incurred damages, including but not limited to disfiguring permanent injury, other physical injury, mental and emotional distress, medical expenses, lost earnings and other economic loss, and will continue to suffer said damages in the future.

192.    Defendants acted and/or failed to act maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

193.    Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

194.    Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Just For Men hair dyes, including a duty to insure that Just For Men did not pose a significantly increased risk of injury to Plaintiffs and other consumers.

195.    Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Just For Men hair dyes.

196.    Defendants marketed Just For Men hair dyes to be used on a regular and even continual basis for cosmetic purposes, but Defendants knew or should have known that the products created a significant risk of severe injuries, (including but not limited to anaphylactic reactions, burns, rashes, weeping sores, and permanent scarring), as well as pain and suffering, and that use of the products could result in the need for medical treatment; therefore rendering the products unsafe for use by Named Plaintiffs or Class Members.

197.    Defendants failed to exercise reasonable care in the manner and method by which it warned users of the risks associated with use of Just For Men hair dyes, as previously described.

198.    Defendants failed to exercise reasonable care by recommending that consumers use the product as an unlicensed drug to perform an allergy "patch test," and further failed to exercise reasonable care in the instructions as to how to conduct the allergy "patch test," as previously described.

199.    Defendants further failed to exercise reasonable care by failing to provide adequate and appropriate instructions for conducting a "skin irritant test" as required by federal law, and by instructing instead that consumer conduct the "allergy" "patch test" repeatedly with every use, thereby increasing the risk of harm to consumers.

200.    Despite the fact that Defendants knew or should have known that Just For Men hair dyes could cause severe reactions in consumers and therefore give rise to physical injury, pain and suffering, and cause the need for medical treatment, Defendants continued to market Just For Men hair dyes as a safe and effective and failed to use ordinary care in providing warnings and instructions to Named Plaintiff and Class Members.

201.    As a direct and proximate result of their use of Just For Men hair dye products, as negligently marketed and sold by Defendants, Named Plaintiffs and Class Members have incurred damages, including but not limited to disfiguring permanent injury, other physical injury, mental and emotional distress, medical expenses, lost earnings and other economic loss, and will continue to suffer said damages in the future.

202.    Defendants acted and/or failed to act maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

203.    Named Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

204.    At the time Defendants designed, manufactured, tested, marketed, sold, and distributed Just For Men for use by Named Plaintiffs and Class Members, Defendants knew of the use for which Just For Men was intended.

205.    Defendants expressly warranted that Just For Men was a safe and effective hair dye, and that their products "are backed by over three decades of research and have delivered great results over 50 million times."

206.    Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of hair care products and dyes including Just For Men and made representations regarding the character or quality of Just For Men, including but not limited to:

      a.      Easy brush in and safe application;

      b.      Gray is gone in 5 minutes;

      c.      Perfectly matches your natural hair color as well as Just For Men hair color shades;

      d.      Keep facial hair looking its best;

      e.      Penetrates course hair in five easy minutes;

      f.      Fool proof way to get rid of gray;

      g.      Management of gray care; and

      h.      Gentle natural looking results.

207.    Defendants further warranted that Just For Men hair dyes was safe for use by consumers to conduct a self-administered allergy "patch test," while fully aware that their over-the-counter hair dyes were not approved by FDA for use as a drug, that the test described was not a "patch

test" but an open test, that the test was impractical, ineffectual and inadequately designed as it could not be accurately conducted or interpreted by a lay person.

208. The Just For Men manufactured and supplied by Defendants was defective in that, when it left the hands of Defendants, it did not conform to representations made by Defendants concerning the product.

209. These material misrepresentations made by the Defendants are false as evidenced by the extensive number of adverse reactions to their Just For Men hair dye products by consumers including but not limited to Named Plaintiffs and Class Members.

210. Plaintiffs and Class Members justifiably relied upon Defendants' representations that Just For Men hair dyes would provide the claimed cosmetic benefits if used in the manner directed by the labeling when Plaintiffs and Class Members selected Just For Men and used Just For Men as a hair dyes as instructed by the Defendants.

211. As a direct and proximate result of Named Plaintiffs' and Class Members' use of the Just For Men and their reliance on Defendants' representations regarding the character and quality of Just For Men, Named Plaintiffs and Class Members have incurred damages, including but not limited to disfiguring permanent injury, other physical injury, mental and emotional distress, medical expenses, lost earnings and other economic loss, and will continue to suffer said damages in the future.

212. Defendants acted and/or failed to act maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

213. Named Plaintiffs and the Class Members incorporate by reference each and every

38

paragraph of this Complaint as if fully set forth herein and further allege as follows:

214.   At the time Defendants designed, manufactured, tested, marketed, sold, and distributed Just For Men hair dyes for use by Named Plaintiffs and Class Members, Defendants knew of the use for which Just For Men hair dyes were intended (their "ordinary use") and impliedly warranted the products to be of merchantable quality and safe for such use, and further that their design, manufacture, testing, labeling and marketing were sufficient.

215.   Defendants further impliedly warranted that Just For Men hair dyes was safe for use by consumers to conduct a self-administered allergy "patch test," while fully aware that their over-the-counter hair dyes were not approved by FDA for use as a drug, that the test described was not a "patch test" but an open test, that the test was impractical, ineffectual and inadequately designed as it could not be accurately conducted or interpreted by a lay person.

216.  Named Plaintiffs and Class Members reasonably relied upon the skill and judgment of Defendants as to whether Just For Men hair dyes were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

217.  Contrary to such implied warranty, the Just For Men hair dyes were not of merchantable quality or safe for their intended use, because the products were unreasonably dangerous and defective as described above.

218.   As a direct and proximate result of Defendants' breach of warranty, Named Plaintiffs and Class Members Named Plaintiffs and Class Members have incurred damages, including but not limited to disfiguring permanent injury, other physical injury, mental and emotional distress, medical expenses, lost earnings and other economic loss, and will continue to suffer said damages in the future.

219.   Defendants acted and/or failed to act maliciously, wantonly, or with a recklessness

suggestive of an improper motive or vindictiveness, so as to warrant the imposition of punitive damages.

**SIXTH CAUSE OF ACTION**
**NEGLIGENT REPRESENTATION AND FRAUD**

220.    Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

221.    Defendants made multiple material representations about Just For Men dyes purchased by Named Plaintiffs and Class Members, including but not limited to:

    a.    Easy brush in and safe application;

    b.    Gray is gone in 5 minutes;

    c.    Perfectly matches your natural hair color as well as Just For Men hair color shades;

    d.    Keep facial hair looking its best;

    e.    Penetrates course hair in five easy minutes;

    f.    Fool proof way to get rid of gray;

    g.    Management of gray care; and

    h.    Gentle natural looking results.

222.    Defendants further represented that Just For Men hair dyes was safe for use by consumers to conduct a self-administered allergy "patch test," while fully aware that their over-the-counter hair dyes were not approved by FDA for use as a drug, that the test described was not a "patch test" but an open test, that the test was impractical, ineffectual and inadequately designed as it could not be accurately conducted or interpreted by a lay person.

40

223.    These material misrepresentations made by the Defendants are false as evidenced by the extreme number of adverse reactions to their Just For Men products by consumers, including but not limited to Plaintiffs.

224.    When Defendants made these material representations, they knew that they were false, and Defendants made the material representations recklessly without any knowledge of their truth and a positive assertion.

225.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product, Just For Men created an unreasonable risk of serious bodily injury yet Defendants negligently misrepresented to Plaintiffs and Class Members that its hair dyes were safe and met all applicable design and manufacturing requirements.

226.    Defendants made these false, material representations with the intention of inducing buyers, including Plaintiffs and Class Members, to act by purchasing the Just For Men by appealing to the buyers' desire to improve their appearance.

227.    Plaintiffs and Class Members acted in justifiable reliance on these material representations made by the Defendants in that they purchased Just For Men specifically under the belief that they would provide the claimed cosmetic benefits if used in the manner directed by the labeling.

228.    Defendants further failed to exercise reasonable care by failing to provide adequate and appropriate instructions for conducting a "skin irritant test" as required by federal law, and by instructing instead that consumer conduct the "allergy" "patch test" repeatedly with every use, thereby increasing the risk of harm to consumers.

229.    As a direct and proximate result of Defendants' deliberate, systematic, and widespread fraudulent and/or negligent representations and omissions, Named Plaintiffs and Class Members have incurred damages, including but not limited to disfiguring permanent injury, other physical

41

injury, mental and emotional distress, medical expenses, lost earnings and other economic loss, and will continue to suffer said damages in the future.

230.    Defendants acted and/or failed to act maliciously, wantonly, or with a recklessness suggestive of an improper motive or vindictiveness, so as to warrant the imposition of punitive damages.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

231.    Named Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

232.    As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase and use of Just For Men by Plaintiffs and Class Members.

233.    Defendants have voluntarily accepted and retained those profits and benefits, derived from Named Plaintiffs and Class Members, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs and Class Members were not receiving a product of the quality, nature, or fitness that had been represented by Defendants, or that Named Plaintiffs and Class Members, as a reasonable consumers, expected to receive.

234.    By virtue of the conscious wrongdoing alleged above, Defendants have been unjustly enriched at the expense of Named Plaintiffs and Class Members, who are entitled in equity and hereby seek the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER LAWS**

235.   Plaintiffs and the Class Members incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

236.   Defendants market and sell goods, including Just For Men hair dyes, to consumers throughout the United States and its Territories, including to Named Plaintiffs and the Class Members.  Defendants' acts and omissions regarding Just For Men hair dyes affect trade and commerce across all the United States and its Territories.

237.   Named Plaintiffs and Class Members are consumers who purchased and used Just For Men hair dye primarily for personal, family and/or household purposes.

238.   Defendants have violated state consumer protection laws and or state unfair trade practices acts by engaging in unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, including without limitation, through its defective design and manufacture of Just For Men hair dye as well as misleading marketing, advertising, selling, and warranting of Just For Men hair dye to consumers.

239.   Among other things, Defendants made numerous deceptive statements regarding Just For Men hair dyes as previously described.

240.   Through its conduct, Defendants have violated the state consumer laws and or unfair trade practices acts which prohibit unfair methods of competition, and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices in the sale of goods.

241.   Plaintiffs bring this action on behalf of themselves and all similarly situated persons for the relief requested and to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Named Plaintiffs, the Class, and the public from Defendants' unfair methods of competition and unfair,

deceptive, fraudulent, unconscionable and/or unlawful practices. Defendants' wrongful conduct has had widespread impact on the public at large and caused serious injuries to the class members.

242.    Defendants have long had notice of Named Plaintiffs' and Class Members' allegations, claims and demands, including from internal audits, field testing, online complaints, and direct complaints regarding Just For Men hair dye.

243.    As a direct and proximate result of Defendants' unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, Named Plaintiffs and the Class Members have suffered ascertainable losses and injuries.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Class Members of the proposed Class pray for relief as follows:

1)    An Order Certifying the Class as defined above;

2)    An Order Designating Named Plaintiffs as Class Representatives and their retained counsel as Class Counsel;

3)    An Order permitting Plaintiffs to present to the trier of fact the Common Issues as discussed above;

4)    Compensatory damages in excess of the jurisdictional amount, including but not limited to compensation for injury, pain, suffering, permanent injury, scarring and disfigurement, mental anguish, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined by the trier of fact in this action;

5) Economic damages in the form of medical expenses, out of pocket expenses, lost wages, and other economic damages in an amount to be determined at trial of this action;

6) Disgorgement of profits, restitution and other forms of equitable relief;

7) Punitive damages;

8) Attorneys' fees, expenses, and costs of the action; and

9) Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

*/s/ Shane C. Fulton*
Shane C. Fulton
**BURG SIMPSON ELDREDGE**
**HERSH & JARDINE, PC**
40 Inverness Drive East
Englewood, CO  80112
(303) 792-5595 Telephone
(303) 708-0527Facsimile
sfulton@burgsimpson.com

OF COUNSEL:

Janet G. Abaray
Kenneth M. Daly
**BURG SIMPSON ELDREDGE**
**HERSH & JARDINE, PC**
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600 Telephone
(513) 852-5611 Facsimile
jabaray@burgsimpson.com
kdaly@burgsimpson.com